# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROBERT ALLEN AST,

       *Plaintiff*,

vs.

BNSF RAILWAY COMPANY,

       *Defendant*.

Case No. 09-2519-EFM

**MEMORANDUM AND ORDER**

This case arises out of injuries that Plaintiff, Robert Ast, allegedly suffered during his employment with Defendant, BNSF Railway Company. Plaintiff claims that his injuries resulted from his attempt to throw a railroad switch that was negligently maintained and repaired by Defendant. This case is now before the Court on the following motions: (1) Defendant's motion to strike or restrict Plaintiff's expert's testimony (Doc. 45); (2) Plaintiff's motion to bar the use of late-disclosed inspection records and dispatch tapes (Doc. 56); and (3) Defendant's motion for summary judgment (Doc. 53). The Court held a hearing on Plaintiff's motion to bar the use of late-disclosed inspection records and dispatch tapes on May 12, 2011.

**I. BACKGROUND**

On May 4, 2008, Plaintiff, a conductor for Defendant who had been trained on how to properly inspect and then correctly throw a railroad switch, injured his left arm when he attempted

to operate a "hard-to-throw" switch. Nearly a year and a half later, Plaintiff filed the present action, asserting a negligence claim under the Federal Employers' Liability Act ("FELA"). In his complaint, Plaintiff alleges that Defendant was negligent in allowing the switch in question to become defective when it knew or should have known that it was reasonably likely that its employees would be injured by a switch in such a state.

In its initial Rule 26(a) disclosures, Defendant provided only one switch inspection record, which was prepared by William Darlington, a track supervisor for Defendant, on May 5, 2008, and revealed that the pounds of pressure necessary to throw the switch stand handle for switch 547E exceeded permissible limits by nearly 200% in certain places, and that switch 547E was lubed and its rollers adjusted. In its response to Plaintiff's first set of interrogatories, dated December 30, 2009, Defendant stated that it had requested documents relating to the maintenance of the switch in question and that it would supply Plaintiff with the documents it received. In its supplemental response to Plaintiff's request for "each and every document setting forth the results of any routine safety audits or safety inspections with regard to the subject railroad switch," dated February 19, 2010, Defendant directed Plaintiff to the inspection report that it had previously provided him and stated that there were no other documents to produce because the switch in question was less than a year old.[1]

Based on the information that had been disclosed up to March 11, 2010, Plaintiff's expert, Alan Blackwell, who spent approximately twenty-four years in the track engineering departments of the Missouri Pacific and Union Pacific Railroads, issued a preliminary report. In his report, Blackwell first stated that it is his experience that the railroad industry has known for decades that

---

[1]*See* Doc. 56-4, p. 3.

operating switches manually is associated with a high risk of injuries and that poor maintenance can be a major contributing factor to switches not operating properly. According to Blackwell, periodic inspections, adjustments, and lubrication of switches are needed to keep switches safe. To bolster these statements, Blackwell cited to three articles: (1) Reducing Muscoskeletal Injuries in Rail Operations, written by Sean Gallagher and attached as exhibit A; (2) Switch stands, switch machines: Same design, new perks; Switch stands and machines have kept the same design components for 100 years, but with an industry focus on safety, new bells and whistles are added every year, written by Misha Wanek and attached as exhibit B; and (3) An Ergonomic Investigation of Railroad Yard Worker Tasks, written by S.R. Kuciamba, G.B. Page, and C.J. Kerk and attached as exhibit C.

Additionally, Blackwell also stated that it has been his experience that it is the custom and practice in the industry for track inspection personnel to make detailed walking inspections of all switches at least once a month. Blackwell concluded his report by stating that it was his opinion that Defendant failed to provide Plaintiff a reasonably safe work environment. Specifically, Blackwell stated that Defendant failed in the following seven ways: (1) inspecting switches at the frequency required; (2) preparing switch inspection records; (3) detecting, correcting, and protecting variations from track safety standards during track inspections prior to the incident; (4) inspecting and maintaining the switch in question so as to ensure that moveable parts were working properly and that the switch throw forces were proper prior to the incident; (5) making adjustments to switch point rollers to prevent switch points from dragging on switch plates and ensure proper switch throw prior to the incident; (6) properly lubricating the switch in question to improve performance and

ensure proper switch throw prior to the incident; and (7) complying with its own internal standards, which, among other things, requires routine inspections and maintenance and record keeping.

On June 9, 2010, while deposing William Darlington, Plaintiff first learned that Defendant had allegedly inspected switch 547E, on a routine basis, in the four months leading up to Plaintiff's injury (the most recent occurring on April 15),[2] and that there was no indication that the switch was defective. This fact was supported not only by Darlington's testimony, but also by the records maintained by Defendant's Track Inspection Management System ("TIMS"), which are commonly known about in the railroad industry. Based on this discovery, Plaintiff reserved the right to redepose Darlington at a later date, which they have not done. According to Defendant's counsel, the reason that the records had not been disclosed earlier is that she had just received them that day. In addition to the TIMS records, Defendant also produced dispatch tapes that apparently show that Plaintiff was not injured on switch 547E.[3]

As set forth in the scheduling order entered in this case, discovery was to close on August 2, 2010. Supplemental disclosures were to be made forty days before August 2, i.e., by June 23.

**Analysis**

As noted above, the following three motions are now before the Court: Defendant's motion to strike or restrict Plaintiff's expert's testimony; Plaintiff's motion to bar the use of late-disclosed inspection records and dispatch tapes; and Defendant's motion for summary judgment. The Court will address these motions in turn.

---

[2]According to Defendant, monthly inspections include checking to make sure that the switch is not hard to throw, that its grease levels are adequate, that there is no loose bolts, that there is no missing cotter pins, and that there is no loose shoulder braces.

[3]In its reply to its motion for summary judgment, Defendant agreed that switch 547E was the switch on which Plaintiff was injured.

-4-

**Defendant's Motion to Strike or Restrict Plaintiff's Expert's Testimony**

In its motion, Defendant sets forth three arguments in support of its position that the opinions contained in Blackwell's report should be excluded in full or at least in part. The first is that Blackwell's opinions are improperly based upon the May 5 inspection report, which, according to Defendant, cannot be used for any purpose in litigation. The second is that certain opinions proffered by Blackwell improperly rely upon out-of-court statements made by others, i.e., hearsay. The third is that Blackwell's opinion that Defendant failed to provide Plaintiff a reasonably safe work environment invades the province of the jury.

Starting with Defendant's initial contention first, the Court finds that it lacks merit. The statute that Defendant premises this contention upon, 49 U.S.C. § 20903, only applies to inspection and accident reports that are filed by railroad carriers with the Federal Railroad Administration ("FRA").[4] Here, there is no evidence that the May 5 inspection report was filed with the FRA. As a result, Plaintiff and Blackwell can rely on it.[5]

---

[4] *See* 49 U.S.C. § 20903 ("No part of an accident or incident report filed by a railroad carrier under 20901 of this title [which provides, "not later than 30 days after the end of each month, a railroad carrier shall file a report with the Secretary of Transportation on all accidents and incidents resulting in injury or death to an individual or damage to equipment or a roadbed arising from the carrier's operations during the month. The report shall be under oath and shall state the nature, cause, and circumstances of each reported accident or incident. If a railroad carrier assigns human error as a cause, the report shall include, at the option of each employee whose error is alleged, a statement by the employee explaining any factors the employee alleges contributed to the accident or incident"] or made by the Secretary of Transportation under Section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report.").

[5] *See Kehdi v. BNSF Ry. Co.*, 2007 WL 2994600, at *2 (D. Or. Oct. 11, 2007) ("The plain language of the statute does not support defendant's contention that defendant's internal reports are privileged."). To the extent Defendant is arguing that 49 U.S.C. § 20903 should be interpreted to include materials that the report filed with the FRA is based on, the Court disagrees. Section 20903 is an exception to the general rule that all relevant information is admissible, *see* Fed. R. Evid. 402, and, as such, should not be interpreted expansively, *see Villa v. Burlington N. & Sante Fe Ry. Co.*, 397 F.3d 1041, 1047 (8th Cir. 2005) (declining to expand section 20903's language to include reports that are not filed with the FRA).

The fact that the report contains the phrase "Report Prepared to Comply with Federal Accident Reporting Requirements and Protected From Disclosure Pursuant to 49 U.S.C. 20903 and 83 U.S.C. 490,"[6] is of no consequence. This is no different than when an overzealous attorney attempts to have documents he reviewed in developing his litigation strategy, which were produced in the ordinary course of business, declared undiscoverable by classifying them as work product. As shown by the uniform rejection of such attempts, the name that a party assigns to a document is not dispositive, rather, the applicability of the sought-after exclusion is contingent upon the exclusion's requirements being satisfied.[7] Therefore, because the requirements of section 20903 have not been satisfied in this case, the statute's exemption does not apply to bar the use of the May 5 report, irrespective of the report's disclaimer.

As for Defendant's second argument, it has some merit. The crux of Defendant's argument is that Blackwell's statements relating to the risks associated with manual switches and the major cause of malfunctioning switches are based on the inadmissible hearsay contained in the three articles referenced in his report and attached as exhibits A, B, and C. Overall, the Court disagrees with Defendant's position. First, it does not appear that Blackwell is relying on these articles to establish that improper maintenance and defective switches can injure railroad employees, but, rather, is referring to them to bolster his opinion that the railroad industry *has notice* of the dangers associated with improper maintenance and defective switches. Thus, insofar as Blackwell relies on these articles to establish notice, no hearsay issues are raised. Second, to the extent that Blackwell

---

[6]Doc. 46-3, p. 2.

[7]*See, e.g., United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) ("It is well established that work-product privilege does not apply to [documents that are prepared in the ordinary course of business or that have been created in essentially similar form irrespective of the litigation].").

is relying on these articles to establish that improper maintenance and defective switches can injure railroad employees, the rules of evidence, namely Fed. R. Evid. 703, allow him to do so so long as the articles are written by experts and are of the type reasonably relied upon by experts in the particular field.[8] Here, the record indicates that exhibits A and C were produced by experts in their respective fields. Furthermore, there is nothing in the record to rebut the presumption created by Blackwell's citation to exhibit A and C that experts in the field reasonably rely on reports similar to exhibits A and C.[9] Accordingly, Blackwell may rely on these exhibits to support his opinions regarding manual switches and their potential to injure,[10] opinions that appear to be based primary on the his experience, which the Court finds is sufficient to qualify him to speak on such matters.

With regard to exhibit B, though, the Court reaches a different conclusion. Unlike exhibits A and C, exhibit B does not appear to be an article written by an expert either in track maintenance or a related field. As a result, Blackwell cannot rely on this article to establish his opinion that improper maintenance and defective switches may have an injurious effect on railroad employees.

---

[8]*See, e.g., Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (citing Fed. R. Evid. 703). "The rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance." *Kinser v. Gehl Co.*, 184 F.3d 1259, 1275 (10th Cir. 1999) (internal quotation marks omitted), *overturned on other grounds*, *Weisgram v. Marley Co.*, 528 U.S. 440, 446 n.2 (2000).

[9]*Cf. Black v. M & W Gear Co.*, 269 F.3d 1220, 1229 (10th Cir. 2001) ("As Defendants have not argued otherwise, this court will assume that the Arndt article is of a type reasonably relied upon by experts in the particular field." (internal quotation marks omitted)).

[10]While Blackwell may base his opinions on the articles, he may not discuss their content in front of the jury for the purpose of establishing that switches can be dangerous if not properly maintained, as it has not been shown that the probative value of this inadmissible evidence substantially outweighs its prejudicial effect. *See* Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 247 n.14 (3d Cir. 2008) (noting that there is a presumption against disclosing inadmissible evidence to the jury under Rule 703). As noted by the Tenth Circuit, the current version of Rule 703 supersedes prior circuit precedent that had allowed such evidence to be disclosed to the jury. *See Black*, 269 F.3d at 1228 n.3.

In sum, Blackwell may rely on all of the articles to bolster his opinion that the railroad industry has notice of the dangers associated with manual switches. However, he can rely only on exhibits A and C to support his claim that switches can be dangerous if not properly maintained.

Defendant's last argument lacks merit. Although Rule 704(a) of the Federal Rules of Evidence prohibits an expert from testifying to "legal conclusions drawn by applying the law to the facts, it does, in certain circumstances, permit expert testimony that "embraces an ultimate issue to be decided by the trier of fact,"[11] which the question of whether Defendant provided Plaintiff a reasonably safe working environment is. The Tenth Circuit has held that expert testimony embracing ultimate issues of fact are admissible under Rule 704(a) when the expert

> explain[s] the bases for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions. The legal terms used are not so complex or shaded with subtle meaning as to be beyond the understanding of the average person, and [the expert's] use of those terms d[oes] not conflict with the court's instructions. Finally the court instruct[s] the jury that it [is] free to entirely disregard an expert's opinion "if [they] should conclude that the reasons given in support of the opinion are not sound."[12]

Based on the standard just enunciated, the Court cannot say at this time that Blackwell should be precluded from stating that it is his opinion that Defendant failed to provide Plaintiff a reasonably safe work environment on May 4. Accordingly, the Court rejects Defendant's third argument.

**Plaintiff's Motion to Bar the Use of Late-Disclosed Inspection Records and Dispatch Tapes**

Despite the fact that Defendant disclosed the additional inspection records and dispatch tapes over forty days before the close of discovery, which is what the scheduling order required, Plaintiff claims in its motion that these materials were not presented timely, and, as a consequence,

---

[11]*Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991).

[12]*Storts v. Hardee's Food Sys.*, 2000 WL 358381, at *13 (10th Cir. Apr. 6, 2000) (quoting *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987)) (second alteration in original).

Defendant should be barred from relying on them for any purpose, Defendant's pleadings should be struck, summary judgment should be granted in Plaintiff's favor on the issue of liability, the Court should find that switch 547E is the one Plaintiff was injured on, Plaintiff should be awarded the expenses that arose from Defendant's late disclosure, and attorney fees should be awarded. For the reasons stated below, the Court grants in part and denies in part Plaintiff's motion.

Rule 26(a)(1) of the Federal Rules of Civil Procedure require a party, without waiting for a discovery request, to provide the opposing party with a copy of all documents that it has in its possession that it may use to support its claim or defense. Rule 26(e)(1) adds that a party is under a continuing duty to timely supplement its earlier disclosures if it obtains additional or corrective information. Rule 37(c)(1) provides that if a party fails to provide the information required by Rule 26(a) or (e), it will not be allowed to use the document for any purpose, unless it can show that its failure to produce was substantially justified or harmless. Additionally, the rule provides that the Court has the power to award appropriate sanctions for violations of Rule 26(a) and (e).[13] Whether a violation of Rule 26 is substantially justified or harmless is left to the broad discretion of the Court.[14] While "[a] district court need not make explicit findings concerning the existence of substantial justification or the harmlessness," it should nevertheless consider the following factors when making its determination: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which

---

[13] *See* Fed. R. of Civ. Proc. 37(c)(1)(C).

[14] *See, e.g., Jacobson v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[15]

After considering the factors enunciated by the Tenth Circuit, the Court concludes that Defendant should not be barred from using the inspection records and dispatch tapes that were disclosed in June 2010. While the timing of the disclosures certainly appear to have prejudiced Plaintiff, the Court believes such prejudice can be cured by providing Plaintiff's expert sixty days from the issuance of this Order to revise his expert report and by requiring Defendant to pay the reasonable costs associated with that endeavor. Affording Plaintiff additional time to have his expert revise his report may push the August trial date back, however, in light of the fact that there has been no showing of bad faith or willfulness,[16] and that the prejudice Plaintiff has incurred is curable, the Court does not believe that this possibility provides a sufficient reason for excluding the records and tapes, which are no doubt relevant pieces of evidence.

With regard to Plaintiff's request that Defendant's pleadings be struck, summary judgment be granted in his favor on the issue of liability, that the Court find that switch 547E is the one he was injured on, and attorney fees be awarded, the Court does not find that such relief is warranted. Notably, it has not been shown that Defendant willfully kept the records or dispatch tapes from

---

[15]*Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)); *accord Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 640 (D. Kan. 2001).

[16]This is not to say that Defendant bears no culpability for the tapes and records not being disclosed before June 9. As stated by the Court at the May 12 hearing, under our system of discovery, counsel has a duty to thoroughly vet their client to ensure that all relevant, discoverable evidence is timely produced. Here, the dispatch tapes and TIMS records are clearly relevant to Defendant's defense and were requested by Plaintiff. Furthermore, these pieces of evidence are not like stray files buried in the bottom desk drawer of the abandoned desk of the guy that used to work for Defendant; rather, they are more akin to the red folder in the central filing system. Based on counsel's representation, it appears that the only reason this evidence was not produced at an earlier time was that defense counsel did not have a thorough discussion with their client to ensure that it understood what its discovery responsibilities entailed. It is this failure that serves as the basis of the Court's award of reasonable costs to Plaintiff.

Plaintiff.  Moreover, as noted above, the prejudice caused by the untimely disclosures can be remedied.  Therefore, the Court denies Plaintiff's request for these forms of relief.

In sum, the Court finds that Plaintiff's expert should be given sixty days from the issuance of this Order to revise his report and that Plaintiff should recoup the reasonable expenses associated with that endeavor.  As for the other forms of relief requested by Plaintiff, though, they should not be awarded.  Accordingly, Plaintiff's motion is granted in part and denied in part.

**Defendant's Motion for Summary Judgment**

Defendant's motion seeks summary judgment on Plaintiff's lone claim in this case, a negligence claim brought pursuant to FELA.  FELA provides that a railroad

> shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its car, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.[17]

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[18]  "The standard applied by federal courts however, in determining whether the evidence is sufficient to send a case to the jury under the FELA [on a negligence theory], is 'significantly broader than the standard applied in common law negligence cases.' "[19]  Thus, while the plaintiff must still put forth evidence

---

[17]45 U.S.C. § 51.

[18]Fed. R. Civ. P. 56(a).

[19]*Standard v. Union Pac. R. Co.*, 1999 WL 992973, at *2 (10th Cir. Nov. 2, 1999) (quoting *Metcalfe v. Atchison, Topeka, & Santa Fe Ry. Co.*, 491 F.2d 892, 895 (10th Cir. 1973)); *see also DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 685 (7th Cir. 1995) ("Under FELA, the plaintiff's burden is significantly lighter than in an ordinary negligence case."); *Jones v. Norfolk S. Ry. Co.*, 1994 WL 669658, at *2 (6th Cir. Nov. 29, 1994) ("This court has held that only when there is a complete absence of probative facts to support the finding of employer negligence under FELA does reversible error appear." (internal quotation marks and alterations in original omitted)); *Smith v. Nat'l R.R. Passenger Corp.*, 856 F.2d 467, 469 (2d Cir. 1988) ("In a case arising under the FELA, a court may set aside a jury verdict and enter judgment n.o.v.

-11-

establishing the four common-law elements of negligence (duty, breach, foreseeability, and causation),[20] he can survive summary judgment by producing evidence that justifies "the conclusion that [the] employer['s] negligence played [some] part, even the slightest, in producing the injury or death for which damages are sought."[21] As noted by a number of circuit courts, courts apply this more lenient standard in order to effectuate Congress' goal of "secur[ing] jury determinations in a larger proportion of cases than would be true of ordinary common law actions."[22]

Based on the evidence presented, and in light of the lenient standard afforded to Plaintiff under FELA, the Court cannot say that Plaintiff has failed to meet his summary judgment burden. First, the fact that the amount of pressure necessary to throw switch 547E exceeded permissible limits by nearly 200% in certain places reasonably suggests that Defendant had not performed regular inspections or maintenance on it, which Plaintiff's evidence shows Defendant had a duty to do. Second, it is reasonably foreseeable that one of Defendant's employees could be injured if Defendant failed to regular inspect or maintain its switches. Third, based on the proximity between when Plaintiff attempted to throw the switch in question and when Plaintiff's injuries arose, it is

---

only when there is a complete absence of probative facts to support the conclusion reached by the jury." (internal quotation marks and alterations in original omitted)); *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 149 (8th Cir. 1982) ("Under the FELA, the right of the jury to pass upon the question of fault and causality must be liberally viewed. . . . The jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions." (internal quotation marks and alteration in original omitted)).

[20]*See Chaffin v. Union Pac. R. Co.*, 192 F. App'x 739, 746 (10th Cir. 2006); *see also Smith v. Union Pac. R. Co.*, 236 F.3d 1168, 1171 (10th Cir. 2000) ("The focus of FELA is the negligence of the employer, not the mere fact that injuries occur.").

[21]*Rogers v. Mo.-Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).

[22]*See, e.g., Hines v. Consol. Rail Corp.*, 926 F.2d 262, 269 (3d Cir. 1991) (internal quotation marks omitted); *Mendoza v. S. Pac. Transp. Co.*, 733 F.2d 631, 633 (9th Cir. 1984); *see also Atl. & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 360 (1962) (stating that under FELA "trial by jury is part of the remedy").

reasonable to infer that Defendant's actions, or more accurately, its alleged inaction, contributed to Plaintiff's injuries. As a result, the Court denies Defendant's summary judgment motion.

**IT IS THEREFORE ORDERED** that Defendant's motion to strike or restrict Plaintiff's expert's testimony (Doc. 45) is hereby GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that Plaintiff's motion to bar the use of late-disclosed inspection records and dispatch tapes (Doc. 56) is hereby GRANTED IN PART and DENIED IN PART. Plaintiff is afforded sixty days from the issuance of this Order to have Alan Blackwell revise his expert report. Furthermore, Plaintiff is entitled to recoup the reasonable costs associated with Blackwell's revision of his report.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Doc. 53) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 19th day of May, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE