**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ROBERT ALLEN AST,

      *Plaintiff,*

   vs.                                                                    Case No.  09-2519-EFM/DWB

BNSF RAILWAY COMPANY,

      *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff is suing his former employer alleging that, due to Defendant's negligent maintenance, Plaintiff was injured while throwing a railroad switch.  In its Second Motion in Limine to Strike Testimony, Defendant asks the Court to exclude testimony from Plaintiff's expert because the expert relied on outdated internal inspection standards and inspected the switch in question three years after Plaintiff's accident.  In response, Plaintiff filed a Motion to Exclude Late-Disclosed Records, asking the Court to exclude previously-withheld records that Defendant recently produced in support of its motion.  The Court denies Defendant's motion in limine because the expert's report is relevant and reliable, and objections dealing with the weight of proffered evidence are more properly addressed on cross-examination.  Upon agreement of the parties, the Court grants Plaintiff's motion and prohibits Defendant from referring to, introducing, or referencing at trial late-disclosed records.

**I. Factual and Procedural Background**

Plaintiff Robert Allen Ast alleges that he was injured in the course of his employment as a conductor with Defendant BNSF Railway Company when Ast attempted to operate a "hard-to-throw" railroad switch on the 547E Main Line. Ast filed the instant action under the Federal Employers' Liability Act ("FELA"), claiming that BNSF was negligent in its maintenance of the switch. According to Ast, BNSF knew or should have known the switch was defective and hazardous to employees. Ast seeks damages for lost earnings and benefits, lost household services, and non-economic damages related to past and future pain and suffering, lost quality of life, and emotional damages. BNSF denies that Ast's alleged injuries and damages were caused by a workplace injury; alternatively, BNSF denies the alleged injury was foreseeable and contends that Ast was contributorily negligent.

Ast's expert in this case is Alan Blackwell, a former track engineer for several railroad companies. On March 11, 2010, Blackwell completed an evaluation of the circumstances of Ast's injury. BNSF subsequently brought its first motion in limine to exclude information contained in Blackwell's report on the grounds that (1) the report relied on an inspection conducted by BNSF after the accident and hearsay, and (2) the report constituted ultimate issue testimony.

Shortly after Blackwell published his report, Ast learned during the deposition of BNSF track inspector William Darlington that BNSF failed to disclose records regarding the 547E Main Line switch that BNSF had in its Track Inspection Management System ("TIMS"). Because these records were not produced during discovery, Blackwell did not consult them when preparing his report, and in fact, Blackwell assumed that BNSF had improperly failed to maintain inspection records. Alleging prejudice, Ast moved the Court to bar BNSF from using the late-disclosed TIMS reports.

In an order addressing both of these motions, as well as BNSF's motion for summary judgment, this Court denied BNSF's motion to exclude Blackwell's testimony and declined to sanction BNSF for failing to previously disclose the TIMS records. But the Court did allot Blackwell more time to supplement his initial report and ordered BNSF to reimburse Ast for the reasonable costs associated with these revisions.

Blackwell provided the parties with a supplemental expert report on July 15, 2011. As a basis for this report, Blackwell reviewed the new TIMS records, Darlington's deposition, and performed a visual inspection of the 547E switch during an on-site visit to Amarillo. Blackwell concluded: (1) BNSF "failed to maintain the switch components (switch points and rods) securely in place"; (2) BNSF failed to maintain the ties and ballast as to prevent contact with switch rods as required by internal standards; (3) BNSF failed to maintain anchors on switch ties on the turnout for the Ben E. Keith switch; and (4) BNSF "failed to comply with the standards of care for maintaining and inspecting switches and turnouts that are listed throughout [the] report."[1]

Blackwell gave a deposition regarding his supplemental report on August 16, 2011. During that deposition, BNSF asked several questions establishing that Blackwell's report relied on the 2005 version of the BNSF Track Inspection Field Manual ("2005 Field Manual"). In particular, BNSF questioned Blackwell about his reliance on Rule 2.5.1(B)(5) of the 2005 Field Manual, which requires BNSF track inspectors to measure and record switch force with a switch stand torque wrench. The 2005 Field Manual was disclosed to Ast during discovery, along with a copy of BNSF's authoritative Engineering Instructions dated December 2008.[2] Upon receiving these

---

[1] Doc. 76, Ex. 2, p. 8.

[2] According to the description on its cover, the Field Manual is a smaller collection of the rules contained in the Engineering Instructions that "can easily be carried and referenced in the field while conducting track inspection." Doc. 81, Ex. 7, p. 2. The Field Manual warns users that is "*does not* replace or supercede [sic] the Engineering

documents, Ast apparently made two assumptions: (1) the documents were one and the same, and

(2) because the accident happened in May 2008, the 2005 Field Manual was the controlling authority

at the time of the accident.  Based on these assumptions, Blackwell relied on the 2005 Field Manual

when conducting his review and did not reference the 2008 Engineering Instructions, which did not

contain Rule 2.5.1(B)(5).

After Blackwell provided the parties with his supplemental report, BNSF moved the Court

to enter an order "prohibiting plaintiff, plaintiff's counsel, and plaintiff's witnesses, from presenting

before the jury, either directly or indirectly, any question, testimony, argument, statement, document,

or exhibit referring in any way" to most issues discussed in Blackwell's report.[3]  BNSF claims that

the information in the report is inadmissible under Rules 403, 702, and 703 of the Federal Rules of

Evidence because the report (1) is unreliable, (2) will not assist the trier-of-fact, and (3) is based on

hearsay.  BNSF's objections stem from Blackwell's reliance on BNSF's 2005 Field Manual rather

than the authoritative, and conflicting, Engineering Instructions, as well as Blackwell's assumption

that the switch in question had not been inspected or altered since the time of Ast's accident.

To support its motion to exclude Blackwell's testimony, BNSF included TIMS reports

showing that BNSF regularly inspected the track since the date of Ast's accident.  BNSF also

provided a 2006 version of BNSF's Engineering Instructions showing that the rule that Blackwell

relied upon in his report  requiring switch stand torque wrench measurements was not in effect at

the time of Ast's injury.  Claiming these reports were never disclosed, Ast moved the Court to

exclude the late-disclosed materials from trial or impose other sanctions for discovery violations.

---

Instructions."  *Id.*  In other words, the Field Manual makes clear that the Engineering Instructions are the authoritative rules for BNSF track inspections.

[3]  Doc. 75, p. 1.

BNSF responded that the Court should not consider Ast's motion because he failed to comply with

Local Rule 37.2, which requires parties to meet and confer before bringing discovery disputes before

the courts.  BNSF also argued that it did disclose a 2008 version of the Engineering Instructions that

was identical to the 2006 version—both Instructions show the deletion of Rule 2.5.1(B)(5).

### III.  Analysis

**I.       Admissibility of Blackwell's Expert Testimony**

BNSF argues that Blackwell's expert testimony should be excluded or limited with respect

to four aspects of Blackwell's report: (1) observations of the a different switch than the 547E Main

Line switch, (2) conclusions that BNSF failed to comply with outdated internal standards, (3)

observations from Blackwell's May 23, 2011, inspection of the switches, and (4) alleged hearsay

exhibits included in Blackwell's report.  The parties agree that only the 547E Main Line switch is

at issue in this lawsuit and Ast will not elicit at trial any testimony from Blackwell regarding other

switches.  For the reasons set forth below, the Court concludes that BNSF's remaining arguments

lack merit.

#### A.       *Outdated Internal Standards*

BNSF takes issue with Blackwell's conclusion that BNSF failed to comply with internal

standards requiring records of torque wrench measurements at turnouts. BNSF contends that

Blackwell's report is incorrect because his opinion relies on outdated material in the 2005 Field

Manual rather than the 2006 Engineering Instructions.  After reviewing the submitted exhibits, it is

clear that BNSF's argument is a factual matter for the jury's consideration.  For example, Blackwell

stated that he relied upon deposition testimony from BNSF track inspector William Darlington that

it was standard practice for BNSF inspectors to use torque wrenches to measure switch throw

forces.[4]  Furthermore, Blackwell's report cites the Federal Railroad Administration's Track Safety

Standards.[5]  These provisions require railroads to inspect each turnout at least monthly and to keep

a record of all required inspections.  Therefore, although BNSF did not have an internal policy that

required a record of turnout inspections at the time of Ast's injury, the jury could find that BNSF

was not in compliance with FRA requirements.  Consequently, BNSF's argument that Blackwell's

report is based on outdated internal standards is an issue for cross-examination or closing arguments

before the jury.

### B.      Blackwell's Inspection of the Switches

BNSF next argues that the conclusions Blackwell drew from his own observations during

his May 23, 2011, inspection of the switches should be excluded as unreliable, not helpful to the

jury, and irrelevant.  The majority of Blackwell's supplemental report draws from his visual

inspection and operation of the 547E switch.  And although Blackwell visited the site more than

three years after Ast was injured, Blackwell asserts that the conditions he witnessed in 2011 were

"substantially similar" to the conditions that existed at the time of Ast's injury in 2008.[6]  BNSF

alleges that "any extrapolation by Blackwell that track conditions in 2011 can be equated to 2008

conditions is speculative at best and lacks the substantially reliable characteristics required by Rules

401 and 702."[7]

Rule 702 of the Federal Rules of Evidence governs the admissibility of opinion testimony

from witnesses qualified as experts by their knowledge, skill, experience, training, or education.

---

[4]  *See* Doc. 81, Ex. 18, p.5.

[5]  49 C.F.R. §§ 213.235(a), 213.241(a), *cited in* Doc. 76, Ex. 2, p.12–13.

[6]  *See* Doc. 76, Ex. 5, p. 19.

[7]  Doc. 85, p. 5.

Under Rule 702, expert opinion testimony is admissible to assist the trier-of-fact in matters of scientific, technical, or otherwise specialized knowledge, provided that such testimony (1) is based upon sufficient facts or data, (2) is a product of reliable principles and methods, and (3) the witness applied the principles and methods reliably to the facts of the case.[8]  As these requirements demonstrate, the court is charged as a gatekeeper to admit only expert testimony that is relevant and reliable.[9]  Consideration of proffered expert testimony is a flexible inquiry specific to the facts of the case at bar.[10]

Before addressing the parties' arguments in this case, it is necessary to clarify the proffered expert testimony.  Blackwell's report contains his observations of his own inspection of the switch at issue.  The report also draws conclusions about the condition of the switch at the time of Ast's injury.  These two assertions present different issues for the Court's consideration.

First, Blackwell can testify to his personal observations of the track.  Because the parties agree that Blackwell is qualified as an expert,[11] his personal observations of the switch are certainly reliable.  Furthermore, his observations are relevant to Ast's claim for relief.  Evidence is relevant to a claim if it "has *any* tendency to make a fact more or less probable than it would be without the evidence."[12]  In a FELA action, a plaintiff must prove all common law elements of negligence,

---

[8]  Fed. R. Evid. 702.

[9]  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

[10]  *Id.* at 593; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (rejecting formulaic application of reliability factors discussed in *Daubert* because "[t]oo much depends upon the particular circumstances of the particular case at issue").

[11]  Ast apparently believed BNSF was questioning Blackwell's qualifications, but BNSF clarified that it has no qualms about certifying Blackwell as an expert, and instead objects to specific assertions in Blackwell's report.

[12]  Fed. R. Evid. 401(a) (emphasis added).

including duty, breach, causation, and damages.[13]  To prove the element of causation, however, the

plaintiff need only show that his or her injuries stem "in whole *or in part*" from the employer's

negligence.[14]  In other words, the evidence must allow the jury to reasonably conclude that the

employer's negligence contributed to the plaintiff's injuries in some way, however minor.[15]  Given

this low burden of proof, Blackwell's observations about the present condition of the switch are

relevant because they lend credence to Ast's assertions that the switch was hard to throw, and that

BNSF failed to maintain the switch in safe operating condition.  In other words, if BNSF is presently

failing to inspect and maintain the switch, there is a greater likelihood that it also failed to do so

three years ago.

Second, although the admissibility of Blackwell's opinion testimony about the condition of

the switch in 2008 presents a more difficult question, the Court concludes that his testimony is

admissible at trial.  Certainly Blackwell's opinion testimony is relevant to Ast's claims, but as BNSF

argues, the reliability of that opinion is less certain.  The Supreme Court has warned:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court
> to admit opinion evidence that is connected to existing data only by the *ipse dixit* of
> the expert.  A court may conclude that there is simply too great an analytical gap
> between the data and the opinion proffered.[16]

Although Blackwell did not include in his report evidence supporting his three-year extrapolation,

the Court does not find "too great an analytical gap" between Blackwell's observations of the switch

---

[13] *See Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).

[14] 45 U.S.C. § 51 (2006) (emphasis added).

[15] *See CSX Transp., Inc. v. McBride*, __ U.S. __, 131 S. Ct. 2630, 2634 (2011) ("[A] defendant railroad caused or contributed to a plaintiff employee's injury if the railroad's negligence played any part in bringing about the injury.").

[16] *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

in 2011 and his opinion that similar conditions existed in 2008.[17]  The lapse in time between the

accident and Blackwell's inspection affects the weight of Blackwell's testimony rather than its

admissibility, and should be addressed at trial during cross-examination and arguments.[18]

Furthermore, Blackwell's opinion about the 2008 condition of the track is not unduly

prejudicial under Rule 403.[19]  BNSF claims that Blackwell's opinion testimony constitutes "temporal

based conclusions that are highly and unfairly prejudicial."   But BNSF misstates other courts'

holdings about temporal conclusions.   The cases BNSF cites as support are wholly irrelevant

because they discuss the impropriety of inferring causation from a specific temporal sequence.[20]

If anything, these cases undercut BNSF's argument that a temporal gap affects the reliability of

proffered evidence.   Moreover, Blackwell's opinion has great probative value as to BNSF's

negligence and, because BNSF can adequately address its concerns about the helpfulness of

Blackwell's testimony on cross-examination, it poses no *unfair* prejudice to BNSF.

---

[17]  *See id.*

[18]  *See, e.g.*, *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Newman v. State Farm Fire & Cas. Co.*, 290 Fed. App'x 106, 114 (10th Cir. 2008) (affirming the district court's conclusion that the defendant " 'barely' made a sufficient showing of reliability and that the issues concerning the experts' opinions go to weight rather than to admissibility"); *Goebel v. Denver & Rio Grande Western R.R. Co.*, 346 F.3d 987, 993 (10th Cir. 2003) (noting that an expert's failure to exclude one alternative cause of injury went to weight, not admissibility); *Miller v. Union Pac. R.R. Co.*, 900 F.2d 223, 225 (10th Cir. 1990) (noting that an expert expressed his conclusions in terms of probability and affirming the district court's decision that "any doubts concerning the plausibility of [the expert's] conclusions go to the weight and not the admissibility of the testimony").

[19]  Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice. . . .").

[20]  *In re Breast Plant Litigation*, 11 F.Supp.2d 1217, 1232 (D. Colo. 1998) ("A temporal relationship by itself, provides no evidence of causation."); *Schmaltz v. Norfolk & Western Ry. Co.*, 878 F.Supp. 1119, 1122 (N.D. Ill. 1995) ("It is well settled that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of Fed. R. Evid. 702.").

### C.       *Hearsay Exhibits Supporting Blackwell's Supplemental Report*

Finally, BNSF argues that Blackwell's report relies upon inadmissible hearsay in the form

of standards utilized by Union Pacific Railroad, Canadian Pacific Railroad, and CSX Rail, which

all call for recorded inspections of switches.  As the Court noted in its previous order in this case,[21]

Rule 703 permits experts to rely upon other inadmissible evidence "[i]f experts in the particular field

would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[22]

Regardless of whether these other railroad standards are offered for the truth of the matter asserted,

they undoubtedly fall within the purview of Rule 703.  BNSF alleges that these documents are an

improper basis for Blackwell's opinion because they are not commonly-held "industry standards"

and because Blackwell failed to explicitly list these documents as the type "reasonably relied on in

the field."   But neither Rule 703 nor any controlling case law require an expert to explicitly,

physically label documents as the type reasonably relied upon by the relevant field.  Nor is an expert

required to confine his or her opinion to authoritative standards binding on the defendant.  To form

an opinion about whether BNSF acted negligently in this case, it was reasonable for Blackwell to

look to the practices of other railroads.  In fact, it is common practice in negligence cases to compare

the actions of a defendant company to those of a reasonably prudent company in the same or similar

circumstances.[23]

---

[21]  Doc. 65, p.7.

[22]  Fed. R. Evid. 703.

[23]  *See, e.g.*, *Denning Warehouse Co. v. Widener*, 172 F.2d 910, 913 (10th Cir. 1949) ("[T]he failure to observe a custom, or the observance of it, does not necessarily amount to due care or the lack of it, but it is admissible as evidence tending to show what an ordinary prudent man would do under the same or similar circumstances."); *see also Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 847–48 (D.C. Cir. 2007) (affirming judgment for the defendants in a negligence case where the plaintiff's expert failed to cite specific transportation standards and instead addressed broad national policies); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 685 (11th Cir. 1984) (discussing, but not requiring, expert testimony as to whether the defendant pharmaceutical company violated the standard of care applicable to a reasonably prudent pharmaceutical company).

In sum, Blackwell's opinion testimony is admissible at trial because it is relevant to Ast's

claims that BNSF's negligence contributed to his workplace injury.  The three-year gap between

Ast's injury and Blackwell's inspection of the switch does not destroy this relevancy, and any

qualms BNSF has about the reliability of Blackwell's opinion can be adequately addressed at trial.

## II.     Ast's Motion to Exclude Late-Disclosed Evidence

As previously noted, BNSF's motion to exclude Blackwell's testimony was premised on

previously undisclosed TIMS reports and a version of BNSF's Engineering Instructions dated 2006.

BNSF produced these records following Blackwell's second deposition on August 16, 2011.  Upon

receipt, Ast moved the Court to exclude these records and impose any other sanctions the Court

deems necessary.  In response, BNSF argues that Ast failed to comply with Local Rule 37.2, which

states: "The court will not entertain any motion to resolve a discovery dispute . . . unless the attorney

for the moving party has conferred or has made reasonable effort to confer with opposing counsel

concerning the matter in dispute prior to the filing of the motion."[24]  Rule 37.2 further states that "a

reasonable effort to confer" requires that the parties "in good faith converse, confer, compare views,

consult, and deliberate" the discovery dispute.[25]

The Court finds that Ast did attempt to resolve this discovery issue with BNSF outside the

Court.  At Blackwell's second deposition, Ast's attorney explicitly renewed his discovery request

for all relevant TIMS records:

> [Y]ou have now referenced in this deposition, you have been using your fingers, 4
> inches tall worth of TIM [sic] records that you have told us all on the record exist
> and we do not have 4 inches tall of TIMS records.  So if you have those, we would

---

[24]  D. Kan. R. 37.2.

[25]  *Id.*

certainly appreciate you complying with Rule 26 and turning them over immediately.[26]

The attorneys then spoke off the record and when they returned, Ast's attorney asked BNSF to look through its records and ensure that all discoverable documents had been disclosed. BNSF did as Ast requested, and then used the previously-withheld documents as a basis for BNSF's motion to exclude the testimony of Ast's expert witness. Favoring substance over form—and recognizing that there comes a point in the litigation process when a discovery conference serves little or no purpose—the Court finds that Ast substantially complied with Local Rule 37.2.[27] But rather than imposing sanctions on BNSF, the Court—with the agreement of both parties—prohibits BNSF from referring to, introducing, or referencing at trial any documents produced after Blackwell's second deposition on August 16, 2011.

**IT IS ACCORDINGLY ORDERED** this 26th day of January, 2012 that Defendant's Second Motion in Limine to Strike Testimony (Doc. 75) is hereby **DENIED**. Plaintiff's Motion to Exclude Late-Disclosed Records (Doc. 81) is **GRANTED**, and Defendant is hereby prohibited from referring to, introducing, or referencing at trial any documents produced after August 16, 2011.

**IT IS SO ORDERED**.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[26] Doc. 81, Ex. 18, p.12.

[27] *See Roth v. Green*, 466 F.3d 1179, 1191 (10th Cir. 2006) (holding that a party seeking sanctions "substantially satisfied" a local rule requiring parties to meet and confer when the party first sent opposing counsel a letter asking that frivolous claims be voluntarily dismissed).